| LODGED | | FILED |
|---|---|---|
| CLERK, U.S. DISTRICT COURT | AO 91 (Rev. 11/11) Criminal Complaint | CLERK, U.S. DISTRICT COURT |
| 8/3/2021 | | August 3, 2021 |
| CENTRAL DISTRICT OF CALIFORNIA BY: ___LM___ DEPUTY | | CENTRAL DISTRICT OF CALIFORNIA BY: D. Brown DEPUTY |

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) |
| FOSTER LEE SCOTT, | ) Case No. 5:21-mj-00516 |
| | ) |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 16, 2020__ in the county of __San Bernardino__ in the __Central__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of a Controlled Substance with Intent to Distribute |

This criminal complaint is based on these facts:

Please see attached affidavit.

☑ Continued on the attached sheet.

/s/ pursuant to Fed. R. Crim. P. 4.1
*Complainant's signature*

FBI Special Agent, James Lamothe
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: August 3, 2021

*Judge signature*

City and state: Riverside, CA

Honorable Kenly Kiya Kato, U.S. Magistrate Judge
*Printed name and title*

AUSA: Christian Acevedo (x6922)

**AFFIDAVIT**

I, James Lamothe, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Foster Lee Scott ("SCOTT") for a violation of 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Methamphetamine), which occurred on or about July 16, 2020.

2. The facts set forth in this affidavit are based on my personal observations, my training and experience, information from police records and evidence, and information obtained from law enforcement and other personnel. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or the investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF SPECIAL AGENT LAMOTHE

3. I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI") and have been so employed since September 2019. I am currently assigned to the Los Angeles Division of the FBI, Victorville Resident Agency.

4. I received formal training at the FBI Academy in Quantico, Virginia, on, among other things, the United States Constitution and conducting criminal investigations, to include

the writing and executing of search and arrest warrants. Presently, I am assigned to work a variety of criminal investigations, including wire fraud, crimes against children, violent gangs, violent crimes, money laundering, crimes committed on federal property, and drug trafficking.

5. In the course of my employment as an FBI Special Agent, I have assisted with the execution of several federal search warrants and seizure of evidence, and I have assisted on more than twenty criminal investigations.

### III. SUMMARY OF PROBABLE CAUSE

6. On July 16, 2020, Barstow Police Department ("BPD") officers developed the suspicion that SCOTT was involved in a home burglary incident. That suspicion, combined with SCOTT being on Post Release Community Supervision ("PRCS") and subject to a search condition of his residence with or without probable cause, led BPD officers to search SCOTT's home as part of a PRCS compliance search. During the search of SCOTT's bedroom, officers found approximately 12 ounces (approximately 340 grams) of a crystalline substance later determined to be methamphetamine, which was divided into six baggies. SCOTT also had $2,328 in cash. During a Mirandized interview, SCOTT admitted that the methamphetamine was his.

### IV. STATEMENT OF PROBABLE CAUSE

7. During the course of this investigation, I reviewed BPD documents and evidence and spoke with BPD Detective Thomas Lewis. Based on my review and conversations, I have learned the following:

**A.   SCOTT's Suspected Involvement in a Home Invasion**

8.   On or about July 14, 2020, Detective Lewis was assigned to investigate a home burglary that occurred in Victorville, California, on or about July 13, 2020.  Detective Lewis reviewed and familiarized himself with the report and learned that a white female adult and two black male adults were believed to have been involved in the home invasion.

9.   Detective Lewis reviewed surveillance footage from a home near the burglary incident and at the approximate time of the incident, and saw that individuals suspected to have participated in the crime used a mid-2000s white Chevrolet Colorado, a pickup truck, with black door handles to get away.  Detective Lewis also noticed that the Chevrolet Colorado had a brake light which was not functioning.  He also noticed that one of the black male adult suspects appeared to be leaving and later entering the Colorado at approximately the same time of the crime, and that individual appeared to be SCOTT, an individual with whom Detective Lewis had had previous encounters.  That individual appeared to fit SCOTT's height and heavy-set build.

10.   Detective Lewis also recalled a robbery that occurred on or about April 11, 2020, which involved Person A and the use of a similar Chevrolet Colorado.  Detective Lewis knew that Person A was in custody at the time of the July 13, 2020 burglary and knew that the Colorado used on April 11, 2020 belonged to Person B.[1]  The detective also knew, based on

---

[1] Person A was later convicted of robbery in this incident.

previous encounters, that Person B was SCOTT's longtime girlfriend, and that the two lived together at a home on Windy Pass in Barstow, California.

11. After reviewing the reports and surveillance footage of the July 13, 2020 crime, and recalling previous experiences with SCOTT and Person B, Detective Lewis searched law enforcement databases and learned that SCOTT was on PRCS, that SCOTT had the statutorily mandated search condition for his residence (with or without probable cause), and that Person B was on parole.

**B. Search of SCOTT's Home Yields Methamphetamine and Cash**

12. On or about July 16, 2020, at approximately 4:00 p.m., Detective Lewis drove to SCOTT's home on Windy Pass and saw a white Chevrolet Colorado parked in the driveway.

13. Detective Lewis knocked on the door and announced, "Barstow Police," to commence a compliance check of SCOTT under PRCS. A female could be heard saying, "Foster, someone's at the door," as Detective Lewis knocked. After a short time, a young girl, who BPD officers later learned was Person B's daughter, came to the door. Detective Lewis identified himself as a Barstow Police Officer and asked Person B's daughter if SCOTT was home, and she confirmed that he was. Detective Lewis asked her to open the door, and Detective Lewis, accompanied by BPD Detectives Arias, Willis, and Greig, stepped inside.

14. Detective Lewis went to the south bedroom of the home, which Detective Lewis knew belonged to SCOTT and Person B based on previous encounters with SCOTT at that home. When Detective

Lewis entered the bedroom, SCOTT was leaning on the bed with what was later determined to be $2,328.00 in cash in his hands. Person B was standing near the closet of the bedroom. SCOTT was detained and escorted to the living room while Detectives Arias and Lewis searched the bedroom. Inside the bedroom, Detectives Arias and Lewis located and seized the following:

  a. Inside the bedroom closet, Detective Lewis found six individual baggies containing an off-white crystalline substance, which appeared to be methamphetamine based on Detective Lewis's training and experience.

  b. Near the bed, stuffed inside a pair of yellow basketball shoes, Detective Lewis found a wallet. Inside the wallet, Detective Lewis found a State of California Benefits Identification card in the name of "Foster Scott" and two BPD citations in the name of "Foster Lee Scott." The 1974 birth year on these three documents matched FOSTER's known birth year.

  c. From the bed, the $2,328.00 in cash.

**C. SCOTT Admits That Methamphetamine Is His**

15. Detective Lewis asked Person B if she knew anything about the methamphetamine, and Person B said that the methamphetamine belonged to SCOTT, but that she did not know where he got it from or if he sells it to anyone.

16. SCOTT was arrested and taken to an interview room at the BPD station. There, Detective Lewis read SCOTT his Miranda rights from a BPD-issued Miranda card and SCOTT voluntarily agreed to speak with Detective Lewis. During that interview, SCOTT said that the methamphetamine was his and that Person B

5

had nothing to do with it. SCOTT said he received the methamphetamine about a month earlier so that he could "make some money." SCOTT claimed that the cash he was handling on the bed when Detective Lewis walked in belonged to Person B and was unrelated to drug sales.

### D. Substance is Confirmed to be Methamphetamine

17. On the same day, Detective Lewis weighed the six baggies of suspected methamphetamine and determined that together, they weighed approximately 12 ounces (approximately 340 grams).

18. On July 20, 2021 (approximately one year later), a United States Drug Enforcement Agency laboratory tested the substance and determined that it amounted to approximately 322 grams of pure methamphetamine.

### V. CONCLUSION

19. For all the reasons described above, there is probable cause to believe that SCOTT has committed a violation of 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Methamphetamine).

Attested to by the applicant,
FBI SA James Lamothe, in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 3rd day of
August 2021.

_____
HONORABLE KENLY KIYA KATO
UNITED STATES MAGISTRATE JUDGE

6